**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:20-CV-000398-RJC-DSC**

| | | |
|---|---|---|
| **LISA LAWS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **MEMORANDUM** |
| **v.** | ) | **AND** |
| | ) | **RECOMMENDATION** |
| **GASTON COUNTY, GASTON** | ) | |
| **COUNTY EMERGENCY MEDICAL** | ) | |
| **SERVICES AND DR. JEFF MYERS** | ) | |
| **AND DR. ANDREW MATTHEWS in** | ) | |
| **their official and individual capacities,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**THIS MATTER** is before the Court on Defendants' "Motion to Dismiss Plaintiff's Second Amended Complaint," Doc. 21, filed on November 24, 2020, and the parties' associated briefs and exhibits, Docs. 8-1, 8-2, 20, 21, 22, 26, and 27.

The Motion has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1) and is ripe for disposition.

Having fully considered the arguments, the record, and the applicable authority, the undersigned respectfully recommends that Defendants' Motion to Dismiss be <u>granted in part</u> and <u>denied in part</u>, as discussed below.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Accepting the factual allegations of the Second Amended Complaint, Doc. 20, as true, Plaintiff Lisa Laws was employed by Gaston County as a paramedic with Gaston County Emergency Medical Services ("GEMS"). She had served for nine years when the incident

leading to her termination occurred. Id. at 3. On September 4, 2016, Plaintiff and another

paramedic responded to a call. Id. at 7. During transport to the hospital, the patient's eyes were

closed. Id. at 7. Plaintiff gently ran her finger across the patient's eyelids to get her to open her

eyes and to check her pupils. Id. at 7. The patient later filed a complaint claiming that Plaintiff

assaulted her by "thumping" her eye. Id. at 8.

As a result of the patient complaint, Plaintiff was charged with simple assault by the

Gaston County District Attorney on September 13, 2016. Id. at 8. On September 15, 2016, she

was placed on administrative leave with pay. Id. at 8. On November 9, 2016, in accordance with

the Gaston County Personnel Policy, a pre-disciplinary conference was held to investigate the

allegations of unsatisfactory work performance and misconduct. Id. at 8.

The following day, Gaston County terminated Plaintiff from her employment as a

paramedic. Id. at 8. The termination letter explained that her termination was "based on an

incident in which [Plaintiff] 'tapped' a patient's eyelid, potentially and allegedly causing injury

in violation of acceptable medical practices and GEMS medical treatment protocols." Id. at 8.

On November 22, 2016, the Deputy Chief of GEMS filed a complaint against Plaintiff

with the North Carolina Office of Emergency Medical Services ("NCOEMS") requesting that

she be investigated for alleged unprofessional conduct, harassment, and abuse or intimidation of

a patient. Id. at 9. The NCOEMS found "insufficient evidence" to support the allegations and

exonerated her. Id. at 10.

Plaintiff timely appealed her termination to the Gaston County Personnel Commission

("Commission"). A hearing was held before the Commission on February 7, 2017. Id. at 8. Both

Plaintiff and GEMS presented evidence. Id. at 9. On February 18, 2017, the Commission issued

its Findings of Fact and Conclusions, Doc. 8-1. Id. at 9. The Commission found that Plaintiff

acted inappropriately and upheld her termination. Id. at 9; Doc. 8-1[1] at 3. But the Commission conditioned her termination as follows: "If she is not found guilty, she is to be reinstated as a paramedic with a two-week suspension and any remediation as required by Gaston County or the Medical Director." Doc. 8-1 at 3. The Commission acknowledged:

> If [Plaintiff] is found not guilty by a court of law on the assault charge and is therefore reinstated, the Medical Director of Gaston County EMS or the North Carolina State Office of EMS may revoke [Plaintiff's] paramedic privileges, which would independently result in [Plaintiff] being terminated from Gaston County, as she would be unable to perform her essential job duties as a paramedic. Such revocation and the consequences of such revocation are beyond the scope of the Gaston County Personnel Commission.

Doc. 8-1 at 3. The Commission further acknowledged:

> The North Carolina Office of EMS (NCOEMS) is currently investigating the September 4 incident. The NCOEMS has the power to revoke Ms. Laws' credentials at a state level. Such a revocation would preclude Ms. Laws from her employment at Gaston County EMS as a Paramedic. Any revocation is subject to administrative review which is beyond the scope of the Gaston County Personnel Commission. The NCOEMS operates independently of Gaston County.

> The Gaston County EMS Medical Director is also investigating the September 4 incident. The Medical Director has the power to revoke Ms. Laws' credentials from Gaston County. Such a revocation would preclude Ms. Laws from her employment at Gaston County EMS as a Paramedic. Any revocation is subject to administrative review which is beyond the scope of the Gaston County Personnel Commission. The Medical Director operates independently of Gaston County.

Doc. 8-1 at 2-3.

On February 24, 2017, Defendant Dr. Jeff Myers, Gaston County EMS System Medical Director, sent a memorandum to Jim Morris, Regional Specialist with NCOEMS. Doc. 20 at 10;

---

[1] On a 12(b)(6) motion to dismiss the court "may consider a document submitted by the movant that was not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 166 (4th Cir. 2016). The Court finds that the Gaston County Personnel Commission Findings of Fact and Conclusions are integral to the Second Amended Complaint and Plaintiff's claims. The document containing the Findings of Fact and Conclusions set forth the conditions of Plaintiff's termination and possible reinstatement. Plaintiff's Second Amended Complaint relies heavily upon the terms and effect of the Gaston County Personnel Commission Findings of Fact and Conclusions and directly quotes the document. The Court may appropriately consider the Gaston County Personnel Commission Findings of Fact and Conclusions as part of this Motion to Dismiss pursuant to Rule 12(b)(6) without converting it to a Rule 56 Motion for Summary Judgment.

Doc. 8-2.[2] In the memorandum, Dr. Myers, subject to his authority under 10A NCAC 13P .0403, withdrew his supervision for Plaintiff to function in either a BLS or ALS capacity within the Gaston County EMS System. Id. In a handwritten note on the bottom of the February 24, 2017 memorandum, Defendant Dr. Andrew Matthews wrote: "I assumed the position as GEMS Medical Director on May 1, 2017 and agree with Dr. Myers previous decision to withdraw supervision for Paramedic Lisa Laws." Id.

Plaintiff did not receive a copy of the 2017 memorandum with Dr. Matthews's statement until her criminal trial on February 14, 2019. Doc. 20 at 10. She was acquitted on the simple assault charge. Id. at 10. She was never reinstated to her position as a paramedic. Id. at 10. Plaintiff was effectively terminated by the EMS Medical Directors' withdrawal of supervision. Id. at 10.

In an unrelated incident, on June 4, 2014, Plaintiff was injured on duty when a vehicle collided with her ambulance. Id. at 4. The onboard computer disengaged from its holds and struck her in the chest. Id. Plaintiff subsequently filed a worker's compensation claim. Id. Her report of the collision was not well received and questioned by her supervisors. Id. at 5-6. Her "supervisors targeted her for harassment, false criticisms, and contrived allegations against her, in efforts to smear her professional standing and personal credibility." Id. at 5.

On February 24, 2020, Plaintiff filed this action in state court. On March 25, 2020, Plaintiff filed an Amended Complaint adding Dr. Myers and Dr. Matthews in their official and individual capacities. On July 17, 2020, Defendants timely removed this action to federal court. On August 14, 2020, Defendants filed a Motion to Dismiss Plaintiff's First Amended Complaint

---

[2] The Memo Withdrawing Supervision is also referred to and quoted in Plaintiff's Second Amended Complaint and is integral to the Complaint. There is no dispute as to its authenticity. It can be properly considered on this Motion to Dismiss without converting it to a Rule 56 Motion for Summary Judgment. See Goines, 822 F.3d at 166.

pursuant to Rules 12(b)(1), 12(b)(2), 12(b)(4), 12(b)(5), and 12(b)(6) of the Federal Rules of Civil Procedure. Before this Court ruled on Defendants' Motion to Dismiss, Plaintiff filed a Motion for Leave to File a Second Amended Complaint, which was granted in part and denied in part. Plaintiff filed her Second Amended Complaint ("Complaint") on November 13, 2020.

Plaintiff failed to file her response to Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint within the required fourteen-day period. She filed her Response on December 9, 2020, and exceeded the twenty-five page limit mandated by Local Rule 7.1(d). On the same day, Plaintiff also filed a Motion to Allow Late Filing of Revised Response in Opposition to Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint. Doc. 24. The Court promptly granted Plaintiff's Motion on December 10, 2020 in a Text Order. The Court ordered Plaintiff to "file a corrected brief forthwith." Id. Plaintiff waited twenty days to file her Revised Memorandum in Opposition to Defendants' Motion to Dismiss.

The Court warns Plaintiff and her counsel that they must comply with the Court's orders including the Pretrial Order and Case Management Plan, the Local Rules, and the Federal Rules of Civil Procedure. Failure to comply fully with any of the Court's orders, the Local Rules, or the Rules of Civil Procedure may result in imposition of sanctions. **Sanctions may include Plaintiff and/or Plaintiff's counsel being ordered to pay Defendant's costs, including reasonable attorney's fees in their entirety, and may also include dismissal of the Complaint with prejudice.**

The Complaint alleges claims for (1) violation of rights guaranteed by the First and Fourteenth Amendments under 42 U.S.C. § 1983, (2) wrongful discharge in violation of public policies set forth in the North Carolina Retaliatory Employment Discrimination Act and the

Occupational Safety and Health Act of North Carolina, and (3) denial of due process rights under the U.S. Constitution.

Defendants Gaston County, GEMS, Myers, and Matthews have moved to dismiss for lack of personal jurisdiction, insufficient service of process, and failure to state a claim upon which relief can be granted.

## II. DISCUSSION

### A. STANDARD OF REVIEW – RULES 12(B)(2) & 12(B)(5)

Under Rule 12(b)(2), Plaintiff bears the burden of setting forth facts sufficient to establish personal jurisdiction. Mylan Labs., Inc. v. Akzo, N.V., 2 F.3d 56, 59-60 (4th Cir. 1993). A summons must properly be served before a federal court may exercise personal jurisdiction over a defendant. Omni Capital Int'l v. Rudolf Wolff & Co., 484 U.S. 97, 104 (1987). "A motion pursuant to Federal Rule of Civil Procedure 12(b)(5) is the appropriate means for challenging the sufficiency of service of process." Elkins v. Broome, 213 F.R.D. 273, 275 (M.D.N.C. 2003).

Once the sufficiency of service is challenged, Plaintiff bears the burden of establishing that service of process was effectuated in accordance with Rule 4 of the Federal Rules of Civil Procedure. Id. In determining whether Plaintiff has satisfied her burden, the court must construe the technical requirements liberally "as long as the defendant had actual notice of the pending suit." Id. "When there is actual notice, every technical violation of the rule or failure of strict compliance may not invalidate the service of process. But the rules are there to be followed, and plain requirements for the means of effecting service of process may not be ignored." Armco, Inc. v. Penrod–Stauffer Bldg. Sys., Inc., 733 F.2d 1087, 1089 (4th Cir. 1984).

Rule 4(e) governs service of process upon individuals in the United States. Fed. R. Civ. P. 4(e). Rule 4(e) provides that service may be accomplished by:

(1) delivering a copy of the summons and complaint to the defendant personally or to a person of suitable age and discretion then residing at the defendant's home or usual place of abode;
(2) delivering a copy of the summons and complaint to an agent authorized by appointment or by law to receive service of process; or
(3) following the law of the state in which the district court sits.

Fed. R. Civ. P. 4(e).  In addition to the above requirements, North Carolina law allows service on an individual by (1) mailing a copy of the summons and complaint, registered or certified mail, return receipt requested, addressed to the party to be served, and delivering to the addressee or (2) mailing a copy of the summons and complaint by signature confirmation as provided by the United States Postal Service, addressed to the party to be served, and delivering to the addressee. N.C. R. Civ. P. 4(j)(1).

Myers and Matthews have moved to dismiss pursuant to Rule 12(b)(2) for lack of personal jurisdiction and Rule 12(b)(5) for insufficient service of process. They argue that this court lacks personal jurisdiction over them in their official and individual capacities because the summons and complaint were not personally served on them, left with a person of suitable age at their homes, or served on an agent authorized to receive service of process. Plaintiff has failed to comply with Rule 4 of the Federal Rules of Civil Procedure. Summonses were originally issued in State Court on February 24, 2020 and renewed on May 22, 2020 as *Alias & Pluries* Summonses under Rule 4 of the North Carolina Rules of Civil Procedure prior to removal. Plaintiff failed to properly complete service of process pursuant to North Carolina law on Myers and Matthews prior to removal of this action.

Following removal, Plaintiff obtained new summonses from this Court for Myers and Matthews on September 29, 2020. Docs. 14, 14-1. As of January 6, 2021, Myers and Matthews have still not been served in their official or individual capacities. Plaintiff's Revised Memorandum in Opposition to Defendants' Motion to Dismiss does not address the issue of

personal jurisdiction or her failure to properly serve these Defendants. Doc. 26. Plaintiff has proffered no return of service, affidavit of service, or waiver of service for Myers or Matthews. Nor has Plaintiff filed a motion for an extension of time to effectuate service of process. Fed. R. Civ. P. 4(m).

Plaintiff has not met her burden of establishing valid service. Elkins, 213 F.R.D. at 275. The Rules of Civil Procedure "are there to be followed [] and plain requirements for the means of effecting service of process may not be ignored." Armco, Inc., 733 F.2d at 1089. This Court lacks personal jurisdiction over Myers and Matthews because they have not been properly served. Accordingly, the undersigned respectfully recommends that Defendants' Motion to Dismiss with respect to all claims against Defendants Myers and Matthews be granted.

**B.** **STANDARD OF REVIEW – RULE 12(B)(6)**

In reviewing a Rule 12(b)(6) motion, "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). The plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 563. A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains enough facts to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

In Iqbal, the Supreme Court articulated a two-step process for determining whether a complaint meets this plausibility standard. First, the court identifies allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555) (allegation that government officials adopted challenged policy "because of" its adverse effects on protected group was conclusory and not assumed to be true). Although the pleading requirements stated in "Rule 8 [of the Federal Rules of Civil Procedure] mark[] a notable and generous departure from the hyper-technical, code-pleading regime of a prior era ... it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Id. at 678-79.

Second, to the extent there are well-pleaded factual allegations, the court should assume their truth and then determine whether they plausibly give rise to an entitlement to relief. Id. at 679. "Determining whether a complaint contains sufficient facts to state a plausible claim for relief "will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief,'" and therefore should be dismissed. Id. (quoting Fed. R. Civ. P. 8(a)(2)).

The sufficiency of the factual allegations aside, "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law." Sons of Confederate Veterans v. City of Lexington, 722 F.3d 224, 228 (4th Cir. 2013) (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)). Indeed, where "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations, a claim must be dismissed." Neitzke v. Williams, 490

U.S. at 328; see also Stratton v. Mecklenburg Cty. Dept. of Soc. Servs., 521 Fed. App'x 278, 293 (4th Cir. 2013)). The court must not "accept as true a legal conclusion couched as a factual allegation." Anand v. Ocwen Loan Servicing, LLC, 754 F.3d 195, 198 (4th Cir. 2014).

### C. DISMISSAL OF GASTON COUNTY EMERGENCY MEDICAL SERVICES AS A DEFENDANT

Defendants contend that GEMS[3] should be dismissed as a defendant because it is not a legal entity and cannot be sued. State law determines "whether a governmental agency has the capacity to be sued in federal court." Efird v. Riley, 342 F. Supp. 2d 413, 419-20 (M.D.N.C. 2004); Fed. R. Civ. P. 17(b). "Under North Carolina law, unless a statute provides to the contrary, only persons in being may be sued." Wright v. Town of Zebulon, 688 S.E.2d 786, 789 (N.C. Ct App. 2010).

N.C. Gen. Stat. § 153A-11 establishes that a county is a legal entity that may be sued. Parker v. Bladen Cty., 583 F. Supp. 2d 736, 740 (E.D.N.C. 2008). "Where a county is the real party in interest, it must sue and be sued in its name." Johnson v. Marrow, 44 S.E.2d 468, 470 (N.C. 1947). But there is no corresponding statute authorizing suit against a county emergency medical services department. See N.C. Gen. Stat. § 143-517 ("Each county shall ensure that emergency medical services are provided to its citizens.").

GEMS is a department of Gaston County under North Carolina law. GEMS is not a legal entity separate and apart from the county. Instead, GEMS is an extension of the county. GEMS thus lacks legal capacity to be sued. See Efird, 342 F. Supp. 2d at 420 (dismissing claims against county sheriff's department for lack of capacity); see also Moore v. City of Asheville, 290 F. Supp. 2d 664, 673 (W.D.N.C. 2003), aff'd, 396 F.3d 385 (4th Cir. 2005) (dismissing claims

---

[3] Plaintiff conceded that GEMS should not be a party to this action and consented to the dismissal of GEMS in her Response to Defendants' Motion to Dismiss Plaintiff's First Amended Complaint. Doc. 11 at 3. But she named GEMS as a party to this action again in her Second Amended Complaint. Doc. 20.

against city police department for lack of capacity). Accordingly, the undersigned respectfully recommends that Defendants' Motion to Dismiss with respect to all claims against GEMS be granted.

**D.    APPLICABLE STATUTE OF LIMITATIONS**

Defendants contend that Plaintiff's § 1983 claims and her claim for wrongful discharge in violation of public policy are barred by the three-year statute of limitations. The statute of limitations period for a tort action based upon wrongful discharge in violation of public policy is three years under N.C. Gen. Stat. § 1–52(1). See Winston v. Livingstone Coll., Inc., 707 S.E.2d 768, 770 (N.C. Ct. App. 2011). The statute of limitations begins to run on the date of discharge. See Renegar v. R.J. Reynolds Tobacco Co., 549 S.E.2d 227, 229 (N.C. Ct. App. 2001). "The statute of limitations for all § 1983 claims is borrowed from the applicable state's statute of limitations for personal-injury actions, even when a plaintiff's particular § 1983 claim does not involve personal injury." Tommy Davis Const., Inc. v. Cape Fear Pub. Util. Auth., 807 F.3d 62, 66-67 (4th Cir. 2015). The Fourth Circuit has held that the three-year statute of limitations provided in N.C. Gen. Stat. § 1-52(5) limits § 1983 claims arising in North Carolina. Id.

A cause of action accrues under federal law "when the plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action." Nat'l Ass'n for Rational Sexual Offense Laws v. Stein, No. 1:17CV53, 2019 WL 3429120, at *9 (M.D.N.C. July 30, 2019) (quoting Nasim v. Warden, Md. House of Corr., 64 F.3d 951, 955 (4th Cir. 1995)). A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the allegations in the complaint.  A Rule 12(b)(6) motion "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Edwards v. City of Goldsboro, 178

F.3d 231, 243–44 (4th Cir. 1999) (quoting Republican Party v. Martin, 980 F.2d 943, 952 (4th Cir. 1992)).

As such, "asserting an affirmative defense, like a statute of limitations defense, in a motion to dismiss presents a particular 'procedural stumbling block' for defendants." CSX Transp., Inc. v. Gilkison, 406 F. App'x 723, 728 (4th Cir. 2010) (per curiam) (quoting Fredericksburg & Potomac R.R. v. Forst, 4 F.3d 244, 250 (4th Cir. 1993)).  As the Fourth Circuit has explained:

> [A] motion to dismiss filed under Federal Rule of Procedure 12(b)(6), which tests the sufficiency of the complaint, generally cannot reach the merits of an affirmative defense, as the defense that the plaintiff's claim is time-barred. But in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6). This principle only applies, however, if all facts necessary to the affirmative defense "clearly appear[ ] on the face of the complaint."

Goodman v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir. 2007) (quoting Forst, 4 F.3d at 250); see also Johnson v. N.C. Dep't of Transp., 418 S.E.2d 700, 702 (1992) (dismissal under Rule 12(b)(6) on the grounds of affirmative defense of statute of limitations is proper "if the complaint on its face reveals an 'insurmountable bar' to recovery" (citation omitted)). "To require otherwise would require a plaintiff to plead affirmatively in his complaint matters that might be responsive to affirmative defenses even before the affirmative defenses are raised." CSX Transp., 406 F. App'x at 728-29 (quoting Goodman, 494 F.3d at 466).

Defendants argue the statute of limitations for Plaintiff's wrongful discharge in violation of public policy claim began to run on November 10, 2016 when she was terminated. Viewing the factual allegations in the light most favorable to Plaintiff, nothing "clearly appears" on the face of the Complaint to show that she had a cause of action against Defendants on November

10, 2016. See CSX Transp., 406 F. Appx. at 729). Likewise, from the face of the complaint, the date of Plaintiff's discharge is unclear. See Renegar, 549 S.E.2d at 229.

Plaintiff was effectively terminated for the second time when the Medical Director withdrew his supervision over her on February 24, 2017. But she did not learn he withdrew his supervision until February 14, 2019. Plaintiff was not aware of her injury, which is the basis of this action, until she received the letter from the medical directors withdrawing supervision. Moreover, Plaintiff was effectively terminated for the third time by the County's refusal to reinstate her as a paramedic on February 14, 2019. Therefore, the date when the statute of limitations began to run for her wrongful discharge claim requires a fact-intensive inquiry that would be better resolved at the summary judgment stage or, if necessary, at trial. See CSX Transp., 406 F. Appx. at 730.

Likewise, Defendants argue that all alleged constitutional deprivations occurred more than three years prior to the initiation of this lawsuit. Defendants suggest that, at the latest, the statute of limitations began to run on February 13, 2017, which was the date the Commission issued its decision to uphold her termination. Doc. 22 at 11-12. However, the Commission's decision to uphold Plaintiff's termination was conditional. If Plaintiff was found not guilty, she was "to be reinstated as a paramedic with a two-week suspension and any remediation as required by Gaston County or the Medical Director." Doc. 8-1 at 3.

Viewing the factual allegations in the light most favorable to Plaintiff, nothing "clearly appears" on the face of the Complaint to show that she possessed sufficient facts about the harm done to her that reasonable inquiry would have revealed her § 1983 cause of action on February 13, 2017. See Nat'l Ass'n for Rational Sexual Offense Laws v. Stein, 2019 WL 3429120, at *9.

Accordingly, the undersigned respectfully recommends that Defendants' Motion to Dismiss on the basis of the applicable statute of limitations be <u>denied</u>.

E.      **SECTION 1983 CLAIMS AGAINST GASTON COUNTY**

In order to prevail under § 1983, Plaintiff must (1) show that she was deprived of a right secured by the Constitution or laws of the United States and (2) set forth sufficient factual allegations to show that the alleged deprivation was committed by a person acting under color of state law. <u>West v. Atkins</u>, 487 U.S. 42, 48 (1988) (to state a § 1983 claim, plaintiff must "allege the violation of a right secured by the Constitution and the laws of the United States"). Furthermore, 42 U.S.C. § 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those part of the United States Constitution." <u>Baker v. McCollan</u>, 443 U.S. 137, 144 n. 3 (1979).

Plaintiff invokes the First and Fourteenth Amendments of the United States Constitution in support of her due process and retaliation claims under § 1983. Plaintiff also brings a separate due process claim, which will be addressed here since the analysis is the same.

For Plaintiff to recover against Gaston County on her § 1983 claims, she must properly establish municipal liability. Plaintiff's due process and First Amendment retaliation claims fail at the outset, notwithstanding the fact that she cannot properly establish municipal liability under § 1983. <u>See</u> <u>Stevens v. Cabarrus Cty. Bd. of Educ.</u>, No. 1:20-CV-00335, 2021 WL 233665, at *4 (M.D.N.C. Jan. 22, 2021) ("In enacting § 1983, Congress did not intend to impose liability on a municipality for a violation of a plaintiff's constitutional rights unless deliberate action attributable to the municipality itself was the "moving force" behind the plaintiff's deprivation.").

a.      **Due Process**

Plaintiff alleges that she had a property right in continued employment as a paramedic and licensed EMT created by the Gaston County Personnel Policy and North Carolina General Statutes. The Due Process Clause guarantees that "[n]o person shall be . . . deprived of life, liberty, property without due process of law." U.S. Const. amend. X, XIV. To state a claim for a due process violation, Plaintiff must show "(1) a cognizable liberty or property interest; (2) the deprivation of that interest by some form of state action; and (3) that the procedures employed were constitutionally inadequate." Shirvinski v. U.S. Coast Guard, 673 F.3d 308, 314 (4th Cir. 2012). When the Due Process Clause is invoked, courts must determine, as a threshold matter, the "precise nature of the private interest that is threatened." Lehr v. Robinson, 463 U.S. 248, 256 (1983).

Plaintiff has not sufficiently alleged a cognizable property interest to support her due process claim. The Supreme Court has explained that:

> A property interest in employment can be created by ordinance, or by an implied contract. In either case, however, the sufficiency of the claim of entitlement must be decided by reference to state law. The North Carolina Supreme Court has held that an enforceable expectation of continued public employment in that State can exist only if the employer, by statute or contract, has actually granted some form of guarantee.

Bishop v. Wood, 426 U.S. 341, 345 (1976). There are no allegations that Plaintiff had an employment contract granting her a property right to continued employment. The Gaston County Personnel Policy explicitly provides that the policy "does not constitute… a contract between Gaston County and any of its employees." Therefore, the Gaston County Personnel Policy does not create a property interest in her continued employment as a paramedic.

North Carolina law does not create a property interest in her continued employment as a paramedic. Plaintiff cites 10A N.C. Admin. Code 13P.0403(c) and 13P.0408 in support of her argument. N.C. Admin. Code. 13P.0403(c)(3) provides that:

The Medical Director may suspend temporarily, pending review, any EMS personnel from further participation in the EMS System when he or she determines that the individual's actions are detrimental to the care of the patient, the individual committed unprofessional conduct, or the individual failed to comply with credentialing requirements. During the review process, the Medical Director may:

(3) permanently revoke the EMS personnel's participation in the EMS System.

N.C. Admin. Code. 13P.0403(c)(3). N.C. Admin. Code 13P.0408(7) provides that the EMS Peer Review Committee for an EMS System shall "establish and implement a written procedure to guarantee due process reviews for EMS personnel temporarily suspended by the medical director." But all allegations in the Complaint show that her supervision was permanently withdrawn. She was not temporarily suspended. Moreover, Dr. Myers, in his role as Medical Director and pursuant to the discretionary authority granted under 10A N.C. Admin. Code § 13P.0403(c), permanently withdrew Plaintiff's paramedic supervision shortly after the Commission upheld her termination. Therefore, these regulations do not create a property interest in her continued employment as a paramedic.

Likewise, Plaintiff's argument that N.C. Gen. Stat. § 131E-159(f) creates a property interest in her job as a paramedic is not supported. Plaintiff only included part of the applicable statute in her Revised Memorandum in Opposition. A reading of the entire statute rebuts her claim. N.C. Gen. Stat. § 131E-159(f) provides that:

The Department may deny, suspend, amend, or revoke the credentials of . . . [a] paramedic . . . in any case in which the Department finds that there has been a substantial failure to comply with the provisions of this Article or the rules issued under this Article. Prior to implementation of any of the above disciplinary actions, the Department shall consider the recommendations of the EMS Disciplinary Committee pursuant to G.S. 143-519. The Department's decision to deny, suspend, amend, or revoke credentials may be appealed by the applicant or credentialed personnel pursuant to the provisions of Article 3 of Chapter 150B of the General Statutes, the Administrative Procedure Act.

N.C. Gen. Stat. § 131E-159(f) (emphasis added). N.C. Gen. Stat. § 131E-159 is found under Article 7 of the Health Care Facilities and Services Act, which is titled "Regulation of

16

Emergency Medical Services." Under the Health Care Facilities and Services Act, "Department" means the State Department of Health and Human Services. N.C. Gen. Stat. § 131E-1(1). The statute does not refer to a County EMS Medical Director's authority to suspend supervision of paramedics. Rather, it establishes the review procedure for the North Carolina Department of Health and Human Services to issue, deny, suspend, amend, or revoke the credentials of a paramedic, which is not at issue here. This statute does not create a property interest in Plaintiff's job as a paramedic.

Plaintiff does not have a constitutionally protected property interest in continued employment as a paramedic. She was subject to the disciplinary provisions as to discharge and appeals in Sections 23.2.3 and 23.2.4 of the Gaston County Personnel Policy. She, likewise, exercised the rights available to her when she appealed her November 2016 termination to the Commission. The Commission held a hearing where both Plaintiff and GEMS presented evidence. The Commission issued Findings of Fact and Conclusions setting forth its decision regarding the appeal of her termination. For these reasons, the undersigned respectfully recommends that Defendants' Motion to Dismiss with respect to Plaintiff's due process claim as alleged in Counts I & II be <u>granted</u>.

**b.**     <u>**Municipal Liability Under § 1983**</u>

"Not every deprivation of a constitutional right will lead to municipal liability." <u>Lytle v. Doyle</u>, 326 F.3d 463, 471 (4th Cir. 2003). Municipal liability only attaches in cases where the entity causes the deprivation through an official policy or custom. <u>Id.</u> <u>See</u> <u>also</u> <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 694-95 (1978). Section 1983 plaintiffs must "adequately plead and prove the existence of an official policy or custom that is fairly attributable to the municipality and that proximately caused the deprivation of their rights." <u>Jordan by Jordan v. Jackson</u>, 15 F.3d

333, 338 (4th Cir. 1994). Under Section 1983, local governments "are not vicariously liable []
for their employees' actions." <u>Connick v. Thompson</u>, 563 U.S. 51, 60 (2011).

In sum, a viable § 1983 <u>Monell</u> claim requires Plaintiff to plead two elements: "(1) the
municipality had an unconstitutional policy or custom and (2) the unconstitutional policy or
custom caused a violation of the plaintiff's constitutional rights." <u>Green v. Obsu</u>, No. CV ELH-
19-2068, 2021 WL 165135, at *13 (D. Md. Jan. 19, 2021). <u>See</u>, <u>e.g.</u>, <u>Kirby v. City of Elizabeth
City</u>, 388 F.3d 440, 451 (4th Cir. 2004); <u>Lytle</u>, 326 F.3d at 471; <u>Davis v. Durham Mental Health
Developmental Disabilities Substance Abuse Area Auth.</u>, 320 F.Supp.2d 378, 403 (M.D.N.C.
2004).

The Fourth Circuit has recognized four possible sources of official policy or custom that
could give rise to municipal liability under Section 1983:

> (1) through an express policy, such as a written ordinance or regulation;
> (2) through the affirmative decisions of individual with final policymaking authority;
> (3) through an omission by policymaking officials that manifest deliberate indifference to
> the rights of the citizens; or
> (4) a practice so persistent and widespread and so permanent and well settled as to
> constitute a custom or usage with the force of law.

<u>Lytle</u>, 326 F.3d at 471; <u>Orndorff v. Raley</u>, No. 3:17-CV-00618-GCM, 2018 WL 5046090, at *7
(W.D.N.C. Oct. 17, 2018), aff'd on other grounds sub nom, <u>Orndorff v. Vill. of Marvin</u>, 773 F.
App'x 132 (4th Cir. 2019). The Complaint fails to properly allege municipal liability under any
of the first three sources. It does not allege any persistent and widespread practice.

i. **Express Policy**

Plaintiff makes several references to "custom and policy" in her Complaint:

Gaston County had an obligation under North Carolina law and regulations, including but not limited to 10A NCAC 13P.0201, to correct the wrongful acts of the medical directors under its authority and to ensure that Plaintiff Laws received a due process review before permanent revocation of her Gaston County EMS system participation. By acquiescing in the medical directors' withdrawal of supervision, Gaston County ratified the action. This ratification rises to the level of a **policy and custom** of Gaston County which deprived Laws of her constitutional rights.

Defendants' reasons for withdrawing supervision of her are pretextual, and that she was discharged for retaliatory reasons, with the motivating factors including that of retaliation for her protected speech, for which she was injured. Defendants' actions were, upon information and belief, a part of an established **custom or policy** of the Defendant Gaston County and GEMS. This **custom and policy** has been established in whole or in part by the failure of Defendant Gaston County and GEMS to protect employees from retaliation for reporting workplace injuries and safety concerns.

Doc. 20 at 12-14 (emphasis added). In her Revised Memorandum in Opposition, Plaintiff cites to case law from the Southern District of Florida for the proposition that a municipality will rarely "have an official adopted policy of permitting a particular constitutional violation." Doc. 26 at 17. Plaintiff also cites to case law from the Eleventh Circuit that suggests a single decision by an entity may constitute policy "even if not phrased as a formal policy statement." Id.

But without the support of substantive factual allegations in the Complaint identifying a written ordinance or regulation that violated her constitutional rights, Plaintiff's passing references to custom or policy are not sufficient to "show the existence of an official policy or custom that is fairly attributable to the municipality and that proximately caused the deprivation of their rights." Jordan by Jordan v. Jackson, 15 F.3d 333, 338 (4th Cir. 1994). Plaintiff has not sufficiently pleaded municipal liability under an express policy theory.

ii.     **Final Policymaker/Ratification**

"Even absent an express written policy, the decisions of a final policymaker can still lead to municipal liability." Smith v. City of Greensboro, No. 1:19CV386, 2020 WL 1452114, at *10 (M.D.N.C. Mar. 25, 2020). But "not every decision by every municipal official will subject a municipality to section 1983 liability." See Riddick v. Sch. Bd. of Portsmouth, 238 F.3d 518, 523 (4th Cir. 2000). For municipal liability to attach, the decision maker must possess "final authority to establish municipal policy with respect to the action ordered." Pembaur v. City of Cincinnati, 475 U.S. 469, 481 (1986). Only the "edicts or acts" of final policy makers "may fairly be said to represent official policy." Monell, 436 U.S. at 694.

Plaintiff does not allege that the medical directors were the final policymakers for Gaston County so as to hold the County liable for a decision made by an individual "whose edicts or acts may fairly be said to represent official policy." Id. Moreover, to the extent Plaintiff identifies the actions of her managers and supervisors, her § 1983 claim against Gaston County fails as municipal liability under § 1983 cannot be established based upon the doctrine of *respondeat superior*. Connick, 563 U.S. at 60. Plaintiff also alleges that Gaston County "ratified the wrongful acts of Dr. Myers and Dr. Matthews by refusing to reinstate Plaintiff to a Paramedic position even after she was cleared of wrongdoing in criminal court and at the NC-OEMS." Doc. 20 at 16.

Assuming Plaintiff is alleging municipal liability on a theory of ratification of a final policymaker's acts, her claim still fails. "A municipality can be held liable for the acts of their employees if such actions are ratified by the final policymakers." Hall v. Marion Sch. Dist. No. 2, 31 F.3d 183, 196 (4th Cir. 1994) (citing St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988)). Such ratification must "rise to the level of a policy or custom that deprives a plaintiff of [her] constitutional rights" and there must be "a clear link between the ratified action and the

constitutional deprivation." <u>Orndorff,</u> 2018 WL 5046090, at *7. Plaintiff has failed to allege sufficient allegations to show a "clear link" between Gaston County's ratification of the Medical Director's withdrawal of her paramedic supervision and the deprivation of her First Amendment and due process rights.

Plaintiff relies on several North Carolina regulations governing County EMS Systems and Medical Directors, most of which are absent from her Complaint, to argue that Gaston County had an obligation to (1) "oversee the actions of the medical director for its EMS system" and (2) "under 10A NCAC 13P.0201 to correct the wrongful acts of the Medical Directors under its authority and to ensure that Plaintiff Laws received a due process review before permanent revocation of her Gaston County EMS system participation." Doc. 26 at 19. Plaintiff's reliance on these regulations is misplaced.

10A N.C. Admin. Code 13P.0201(a) requires county governments to establish EMS Systems and lists fifteen requirements for them to follow. Plaintiff has not identified any specific requirement that Gaston County EMS failed to follow. Moreover, under 10 N.C. Admin. Code 13P.0401, each EMS System shall have a medical director appointed, either directly or by written delegation by the county, "to assure medical oversight of the system." "'Medical Director' means the physician responsible for the medical aspects of the management of a practice setting utilizing credentialed EMS personnel." 10 N.C. Admin. Code 13P.0102(36).

Thus, the county-appointed Medical Director, and not Gaston County, oversees the EMS System. <u>See</u> 10 N.C. Admin. Code 13P.0401; 13P.0403 (listing ten responsibilities of the medical director). The Medical Director also has the authority under 10A N.C. Admin. Code 13P.0403(c)(3) to "permanently revoke the EMS personnel's participation in the EMS System" during the review process. Although the language of 10A N.C. Admin. Code 13P.0403(c) has

not been interpreted by a North Carolina court, this regulation does not appear to grant a review process for a Medical Director's permanent, rather than temporary, withdrawal of paramedic supervision. Plaintiff also alleges the violation of 10A NCAC 13P.0408(7), which provides that the EMS Peer Review Committee shall establish and implement a written procedure to guarantee due process reviews for EMS personnel temporarily suspended by the medical director. But all allegations in the Complaint show that Plaintiff's supervision was permanently withdrawn, not temporarily suspended.

Lastly, Plaintiff argues Gaston County "ratified the actions of the Medical Directors when it allowed the withdrawal of supervision without requiring compliance with state law." Doc. 26 at 20. The Court has reviewed the state statutes[4] cited by Plaintiff. They do not address a County EMS Medical Director's authority to suspend supervision of paramedics. Id. Rather, they address the authority of the North Carolina Medical Care Commission to adopt rules governing emergency medical services. Accordingly, the Court finds that Plaintiff has failed to plead sufficient facts to support municipal liability under a final-policymaker theory of ratification.

### iii. Deliberate Indifference

"A plaintiff must demonstrate that a municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision." Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown, 520 U.S. 397, 411 (1997). Plaintiff alleges that Gaston County "acted with gross and deliberate indifference" to her "constitutional and legal rights" by arbitrarily refusing to reinstate her and by not following its own policies and applicable North Carolina statutes and regulations. Doc. 20 at 11. Plaintiff cites no binding authority concluding that a county's refusal to reinstate an employee rises to the level of

---

[4] N.C. Gen. Stat. §§ 131E-155(7), 131E-155(1), 131E0-155(15a), 143-508, 143-508(b), 143-508(d)(3), 143-508(d)(7), and 143-508(d)(10).

deliberate indifference. Accordingly, the Court finds that Plaintiff has failed to allege sufficient facts to support a plausible claim that Gaston County was deliberately indifferent in violation of § 1983.

Plaintiff has failed to state a claim against Gaston County upon which relief can be granted for municipal liability under § 1983. For these reasons, the undersigned respectfully recommends that Defendants' Motion to Dismiss with respect to this claim be granted.

### c. **First Amendment Retaliation Claim Under § 1983**

Plaintiff alleges that she was deprived of her constitutional right to free speech in violation of the First and Fourteenth Amendments and that Gaston County retaliated against her for engaging in protected speech. To state a retaliation claim under Section 1983, Plaintiff must allege that: (1) she engaged in protected First Amendment activity, (2) Defendant took some action that adversely affected her First Amendment rights, and (3) there was a causal relationship between her protected activity and Defendant's conduct. See Martin v. Duffy, 858 F.3d 239, 249 (4th Cir. 2017) (internal citations omitted). "[F]or purposes of a First Amendment retaliation claim under § 1983, a plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter 'a person of ordinary firmness' from the exercise of First Amendment rights." Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 500 (4th Cir. 2005). But "[n]ot all retaliatory conduct tends to chill First Amendment activity and a plaintiff seeking to recover for retaliation must show that the defendant's conduct resulted in something more than a 'de minimis inconvenience' to her exercise of First Amendment rights." Id.

To establish Plaintiff engaged in protected First Amendment activity, the court must first determine "whether the employee spoke as a citizen on a matter of public concern." Garcetti v. Ceballos, 547 U.S. 410, 418 (2006). An employee who does not speak as a citizen on a matter of

public concern has "no First Amendment cause of action based on his or her employer's reaction to the speech." Id. Whether speech addresses a matter of public concern versus a matter of personal interest "must be determined by the content, form, and context of a given statement, as revealed by the whole record." Connick v. Myers, 461 U.S. 138, 147-48 (1983). In Borough of Duryea, Pa. v. Guarnieri, the Supreme Court held that a petition made via "an internal grievance procedure," which does "not seek to communicate to the public or to advance a political or social point of view beyond the employment context," does not constitute a matter of public concern. 564 U.S. 379, 398-99 (2011).

Plaintiff did not speak as a citizen on a matter of public concern. Her workplace safety complaints about the internal operations and conditions of her employment as a paramedic, including the placement of an onboard computer, are similar to the internal grievance procedure in Guarnieri. There are no allegations that Plaintiff made any statements to an audience beyond her supervisors or to anyone outside her workplace. Likewise, she has cited no authority suggesting that filing a workers' compensation claim is a matter of public concern. Viewing the factual allegations in the light most favorable to Plaintiff, she has not sufficiently alleged that she engaged in protected First Amendment activity.

Furthermore, Plaintiff cannot satisfy the second and third elements. There are no allegations that Gaston County took any action that adversely affected her First Amendment rights. Plaintiff's allegations that her protected speech was a substantial factor in the termination of her employment and withdrawal of supervision fail to show the existence of a causal relationship between her alleged protected activity and Defendant's conduct. See Martin, 858 F.3d at 249. Plaintiff has failed to show temporal proximity between Defendant's awareness of her alleged protected activity and the adverse action. See Sharpe v. Winterville Police Dep't, No.

4:19-CV-157-D, 2020 WL 4912297, at *4 (E.D.N.C. Aug. 20, 2020). Her termination and supervision withdrawal occurred more than two years after she allegedly engaged in First Amendment protected activity.

Accordingly, the undersigned respectfully recommends that Defendants' Motion to Dismiss with respect to Plaintiff's First Amendment retaliation claim under § 1983 be <u>granted</u>.

### F. <u>WRONGFUL DISCHARGE IN VIOLATION OF PUBLIC POLICY</u>

In North Carolina, "absent an employment contract for a definite period of time," employees are at-will and may "terminate their association at any time and without reason." <u>Gravitte v. Mitsubishi Semiconductor Am., Inc.</u>, 428 S.E.2d 254, 258 (N.C. Ct. App. 1993). North Carolina courts have recognized a limited exception to the employment at-will doctrine for an employee "discharged for an unlawful reason or purpose" that violates public policy. <u>Coman v. Thomas Mfg. Co.</u>, 381 S.E.2d 445, 447 (N.C. 1989). North Carolina courts have also recognized wrongful discharge claims where the employee was discharged for engaging in legally protected activity, such as filing a workers' compensation claim. <u>Pierce v. Atl. Grp., Inc.</u>, 724 S.E.2d 568, 576 (N.C. Ct. App. 2012).

To establish a prima facie case of retaliation, Plaintiff must show that she (1) engaged in a protected activity, (2) the employer took adverse action, and (3) a causal connection existed between the protected activity and the adverse action. <u>Salter v. E & J Healthcare, Inc.</u>, 575 S.E.2d 46, 51 (N.C. Ct. App. 2003) (quoting <u>Brewer v. Cabarrus Plastics, Inc.</u>, 504 S.E.2d 580, 586 (N.C. Ct. App. 1998)).

Plaintiff cites to the North Carolina Retaliatory Employment Discrimination Act ("REDA") and the Occupational Safety and Health Act of North Carolina ("OSHA") in support of her wrongful discharge claim. REDA prohibits discrimination against an employee who has

filed a workers' compensation claim. See N.C. Gen. Stat. § 95-241(a)(1)[5]; Salter, 575 S.E.2d at 51 (recognizing that it is a wrongful discharge in violation of public policy to fire an employee in retaliation for filing a workers' compensation claim). But discharge of an employee who engaged in a protected activity is not prohibited if "the [employer] proves by the greater weight of the evidence that it would have taken the same unfavorable action in the absence of the protected activity." N.C. Gen. Stat. § 95-241(b). OSHA also prohibits retaliatory discharge against employees who report workplace safety violations or concerns. See N.C. Gen. Stat. §§ 95-126 *et seq.*, 95-130 *et seq.*; see also Brooks v. Stroh Brewery Co., 231 382 S.E.2d 874, 878 (N.C. Ct. App. 1989).

Plaintiff has failed to allege sufficient facts to state a retaliation claim. She engaged in protected activities by filing a workers' compensation claim and reporting unsafe working conditions. But there is no close temporal connection between Plaintiff's protected activities in 2014 – filing a workers' compensation claim and reporting safety concerns regarding onboard computers – and her termination in November 2016. See Salter, 575 S.E.2d at 51; Johnson v. Trustees of Durham Tech. Cmty. Coll., 535 S.E.2d 357, 362 (N.C. Ct. App. 2000) (no close temporal connection between claim and adverse action after one year); Shaffner v. Westinghouse Electric Corp., 398 S.E.2d 657, 659 (1990) (no close temporal connection between claim and termination, which occurred approximately two and one-half months apart). "The causal connection must be something more than speculation; otherwise, the complaining employee is clothed with immunity for future misconduct and is better off for having filed the complaint rather than merely being no worse off." Brooks, 382 S.E.2d at 882 (internal quotations omitted).

---

[5] In pertinent part, the Retaliatory Employment Discrimination Act provides: (a) No person shall discriminate or take any retaliatory action against an employee because the employee in good faith does or threatens to do any of the following: (1) File a claim or complaint, initiate any inquiry, investigation, inspection, proceeding or other action, or testify or provide information to any person with respect to any of the following: Chapter 97 statutes.

Plaintiff offers nothing more than speculation about the casual connection between her participation in protected activities and her discharge in November 2016. She fails to explain the almost three-year time lapse between the protected activities and her discharge and withdrawal of supervision. Moreover, Gaston County has shown by the greater weight of the evidence that it would have terminated Plaintiff in the absence of the protected activity. N.C. Gen. Stat. § 95-241(b). Her termination letter in November 2016 advised that she was terminated "based on an incident in which [she] 'tapped' a patient's eyelid, potentially and allegedly causing injury in violation of acceptable medical practices and GEMS medical treatment protocols." Doc. 20 at 8. The Medical Director withdrew her paramedic supervision in February 2017 "based on the objective findings from a recent incident involving an injury to a patient's eye while in the care of Paramedic Laws." Doc. 20 at 10.

Accordingly, the undersigned respectfully requests that Defendants' Motion to Dismiss with respect to this claim be <u>granted</u>.

## III. <u>ORDER</u>

**IT IS ORDERED** that all further proceedings in this action, including <u>all</u> discovery, are **STAYED** pending the District Judge's ruling on this Memorandum and Recommendation and Order.

## IV. <u>RECOMMENDATION</u>

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that Defendants' "Motion to Dismiss Plaintiff's Second Amended Complaint," Doc. 21, be **GRANTED IN PART AND DENIED IN PART**. That is, the undersigned respectfully recommends that the Motion to Dismiss be DENIED as to the applicable statute of limitations under Rule 12(b)(6), but otherwise GRANTED as to Counts I, II, and III.

## V. **NOTICE OF APPEAL RIGHTS**

The parties are hereby advised that pursuant to 28 U.S.C. §636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within fourteen days after service of same.  Failure to file objections to this Memorandum with the District Court constitutes a waiver of the right to de novo review by the District Judge.  Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); Wells v. Shriners Hosp., 109 F.3d 198, 201 (4th Cir. 1997); Snyder v. Ridenour, 889 F.2d 1363, 1365 (4th Cir. 1989).   Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal.  Thomas v. Arn, 474 U.S. 140, 147 (1985); Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Wells, 109 F.3d at 201; Wright v. Collins, 766 F.2d 841, 845-46 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation to the parties' counsel and to the Honorable Robert J. Conrad, Jr.

**SO RECOMMENDED.**

Signed: February 8, 2021

David S. Cayer
United States Magistrate Judge